**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| PEI LICENSING, LLC )<br><br>)<br>Plaintiff, )<br><br>)<br>v. )<br><br>)<br><br>)<br>PUDGY PENGUINS INC. )<br>f/k/a LSLTTT HOLDINGS INC. )<br><br>)<br><br>)<br>Defendant. ) | Civil Action No. _____ |

**COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR**
**COMPETITION AND RELATED CLAIMS**

Plaintiff PEI Licensing, LLC ("PEI"), by and through its attorneys, brings these claims

against Pudgy Penguins Inc. f/k/a LSLTTT Holdings Inc. ("Defendant") based on Defendant's

applications to register and Defendant's infringing use of a family of PENGUIN trademarks that

are confusingly similar to PEI's PENGUIN word and design trademarks (e.g.,  ) in connection

with apparel and related goods and services:

**NATURE OF ACTION**

1.     This is an action for trademark infringement, dilution and unfair competition in

violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and (c); deceptive trade practices

in violation of the Florida Deceptive and Unfair Trade Practices Act, 501 FLA. STAT. § 201 et

seq.; and the Florida common law of unfair competition.

2.     This action results from Defendant's unauthorized use and attempted registration

of various PENGUIN word and design trademarks in connection with apparel and related goods

and services that are confusingly similar to PEI's federally registered and famous PENGUIN and penguin design trademarks.

## PARTIES

3.     PEI Licensing, LLC is a Delaware limited liability company with a principal place of business at 3000 NW 107th Avenue, Miami, Florida 33172. PEI is the trademark owner for Perry Ellis International and its affiliates. One of PEI's most famous brands is PENGUIN®, which has been a fashion mainstay since it was founded in 1955.

4.     Defendant Pudgy Penguins Inc. f/k/a LSLTTT Holdings Inc. is a Delaware corporation with an address of 16192 Coastal Highway, Lewes, Delaware 19958. Defendant owns and operates the brand Pudgy Penguins which sells apparel and other items.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over PEI's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b). This Court has supplemental jurisdiction over PEI's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367 because these claims are joined with substantial and related claims under the trademark laws of the United States, and they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy or derive from a common nucleus of operative facts.

6.     This Court possesses personal jurisdiction over Defendant pursuant to Florida Statute § 48.193(1)(a)(1), (2), and (6) on the grounds that Defendant has engaged, and is seeking to continue to engage, in a business venture in this state, has committed a tortious act within this state, and caused injury to an entity within this state arising out of acts or omissions inside and

outside this state and such an assertion is in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

7.      This Court has personal jurisdiction over Defendant because Defendant targets and makes sales in Florida and this District and transacts business in this District. Defendant operates an Internet website at www.pudgypenguins.com ("Defendant's Website"), which is accessible by and targets residents of Florida and this District. Defendant has purposefully availed itself of the benefits of doing business in Florida by actually transacting business in Florida, and Defendant can reasonably anticipate being haled into court in Florida.

8.      Moreover, Defendant has shipped product to this District. Attached as Exhibit A is a true and correct copy of a receipt for an online product purchase from Defendant's Website to an address in this District.

9.      Defendant also filed numerous trademark applications to register various PENGUIN marks with the United States Patent and Trademark Office ("USPTO"), which were assigned Application Serial Nos. 97448908, 97449689, 97646264, 98066131, and 97448815. Defendant or Defendant's representative executed declarations, stating, inter alia, that Defendant is using or has a bona fide intention to use the applied-for trademarks in commerce that the United States Congress can regulate on or in connection with the goods and services identified in the applications.

10.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because PEI and/or its related companies are doing business in this District, the claims arose in this District, and a substantial part of the events giving rise to the claims occurred in this District. Moreover, Defendant transacts business in this District, has committed tortious acts in this District, and has engaged in activities that subject Defendant to the jurisdiction of this Court. Finally,

because Defendant is subject to personal jurisdiction in this District, venue is appropriate in this District.

**PEI AND ITS FAMOUS PENGUIN MARKS**

11.     PEI, with its affiliates and related companies, is a world-famous designer, distributor and licensor of high-quality men's and women's apparel, eyewear, fashion accessories, home goods, fragrances, and other items. PEI manufactures, markets, and distributes its goods under a number of well-known, globally recognized brands, including, for example, PERRY ELLIS®, LAUNDRY BY SHELLI SEGAL®, FARAH®, and GOTCHA®. Among this portfolio of world-renowned brands is PEI's famous PENGUIN® word and design marks.

12.     PEI's goods are distributed through regional, national, and international department stores, national and regional chain stores, mass merchants, green grass and other specialty stores. PEI also engages in direct-to-consumer business through company-owned retail stores and e-commerce websites.

13.     PEI, through its predecessors and/or related companies, adopted and first used a penguin design on or in connection with apparel and related goods at least as early as 1956 and the PENGUIN word mark at least as early as 1967. Since those dates, PEI, through its predecessors and/or related companies, has continuously used PENGUIN and PENGUIN-formative word and design marks on apparel, retail services, and other goods and services spanning many International Classes, including, for example, Classes 3, 9, 14, 18, 20, 24, 25, 27, 28, and 35.

14.     PEI, through its predecessors, created the first logo golf shirt in the United States in the 1950s, which prominently featured PEI's Original Penguin logo (  ) on the chest of the shirt. The shirt quickly became a favorite of professional golfers and celebrities.

15.     Today, PEI's iconic Original Penguin logo ( ) is immediately recognized by consumers nationwide, and apparel and related goods bearing PEI's penguin design continue to be a favorite of consumers, professional athletes, and celebrities. PEI's PENGUIN® brand is at the forefront of fashion, and PEI's PENGUIN-branded apparel, accessories, and other goods are widely available throughout the United States and abroad, including through PEI's primary United States PENGUIN retail website at www.originalpenguin.com ("PEI's Website").

16.     A few examples of PEI's PENGUIN apparel are shown below:









17.     PEI owns the following United States trademark registrations, all of which are legally and validly registered on the Principal Register of the USPTO, and many of which have long since acquired "incontestable" status (collectively, the "PEI Registrations"):

| Mark | Reg. No. | Goods / Services | Status |
|---|---|---|---|
| | 2,880,454 | Clothing, namely, knit and woven shirts, t-shirts, sweatshirts, outerwear in the nature of wind-resistant jackets, jackets, coats, vests, pants, shorts, sweaters, headwear, namely, hats, caps, visors and headbands, footwear, namely shoes, sneakers and sandals, ties, wristbands, belts for clothing, swimsuits, hosiery, underwear and socks | Incontestable |
| | 4,598,008 | Dress shirts and tuxedo shirts; men's, women's and children's underwear, sleepwear, loungewear, pajamas and robes | Incontestable |
| | 6,912,543 | Golf shirts; polo shirts | Registered |
| | 7,458,086 | Retail store services featuring apparel, hats, leather goods, fashion accessories, footwear, cosmetics, personal care products, eyewear, towels, bags, luggage and sports equipment. | Registered |

| Mark | Reg. No. | Goods / Services | Status |
|---|---|---|---|
|  | 5,376,027 | Towels, pillowcases, bed sheets, bed blankets, comforters, comforter cases, bedspreads, pillow shams; mattress pads, mattress encasement's being mattress covers, bed sheets, bed blankets, traveling blankets, comforters, mattress protectors being mattress pads and pillow protectors being pillow cases | Incontestable |
|  | 3,717,329 | Watches, clocks, parts of watches and clocks, and their cases; Luggage, luggage straps, travel bags, garment bags and shoe bags for travel, briefcase, briefcase-type portfolios, attache cases, messenger bags, handbags, pocketbooks, leather and fabric evening bags, clutches, tote bags, athletic bags, duffel bags, beach bags, diaper bags, cosmetic bags sold empty, toiletry cases sold empty, school bags, knapsacks, waist packs, umbrellas, wallets, billfolds, business card cases, credit card cases, key cases, change purses | Incontestable |
|  | 4,132,700 | Fragrances, namely, perfumes, eau de parfum, cologne, eau de toilet, body lotion, bath lotion, bath gel, hand soap, perfumed soap and cosmetics | Incontestable |
|  | 4,058,749 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Incontestable |
|  | 5,822,147 | Pillows | Incontestable |
|  | 4,308,261 | Retail store services featuring apparel, hats, leather goods, fashion accessories, footwear, cosmetics, personal care products | Incontestable |

7

| Mark | Reg. No. | Goods / Services | Status |
|---|---|---|---|
|  | 2,870,641 | Clothing, namely, knit and woven shirts, t-shirts, sweatshirts, outerwear in the nature of wind resistant jackets, jackets, coats, vests, pants, shorts, sweaters, headwear, namely, hats, caps, visors and headbands, footwear, namely, shoes, sneakers and sandals, ties, wristbands, belts for clothing, swimsuits, hosiery, underwear and socks. | Incontestable |
|  | 3,323,720 | Clothing, namely, knit and woven shirts, t-shirts, sweatshirts, outerwear in the nature of wind resistant jackets, jackets, coats, vests, pants, shorts, sweaters, headwear, namely, hats, caps, visors and headbands, footwear, namely, shoes, sneakers and sandals, ties, wristbands, belts for clothing, swimsuits, hosiery, underwear and socks | Incontestable |
|  | 1,034,409 | Golf balls | Incontestable |
| **PENGUIN** | 2,749,389 | Slacks, walking shorts, sports shirts, and jackets | Incontestable |
| **PENGUIN** | 4,263,091 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Incontestable |
| **ORIGINAL PENGUIN** | 5,391,523 | Retail store services featuring apparel, hats, leather goods, fashion accessories, jewelry, footwear, cosmetics, personal care products, eyewear, luggage and sports equipment | Incontestable |
| **AN ORIGINAL PENGUIN** | 3,717,328 | Watches, clocks, parts of watches and clocks, and their cases | Incontestable |
| **ORIGINAL PENGUIN BY MUNSINGWEAR** | 4,598,009 | Dress shirts and tuxedo shirts; men's, women's and children's underwear, sleepwear, loungewear, pajamas and robes | Incontestable |

| Mark | Reg. No. | Goods / Services | Status |
|---|---|---|---|
| **ORIGINAL PENGUIN BY MUNSINGWEAR** | 3,681,969 | Luggage, luggage straps, travel bags, garment bags and shoe bags for travel, briefcases, briefcase-type portfolios, attache cases, messenger bags, handbags, pocketbooks, leather and fabric evening bags, clutches, tote bags, athletic bags, duffel bags, beach bags, diaper bags, cosmetic bags sold empty, toiletry cases sold empty, school bags, knapsacks, waist packs, umbrellas, wallets, billfolds, business card cases, credit card cases, key cases, change purses | Incontestable |
| **ORIGINAL PENGUIN BY MUNSINGWEAR** | 4,032,486 | Fragrances, namely, perfumes, eau de parfum, cologne, eau de toilet, body lotion, bath gel, hand soap, perfumed soap and cosmetics | Incontestable |
| **AN ORIGINAL PENGUIN BY MUNSINGWEAR** | 5,386,233 | Belts; Coats; Flip flops; Gloves; Hosiery; Jackets; Jeans; Pants; Polo shirts; Robes; Sandals; Scarves; Shirts; Shoes; Shorts; Skirts; Sleepwear; Sneakers; Socks; Suits; Sweaters; Swimwear; Tank tops; Ties as clothing; Underwear; Vests; Wind-jackets; Wristbands as clothing; Bow ties; Dress shirts; Sweat shirts; T-shirts | Incontestable |
| **AN ORIGINAL PENGUIN BY MUNSINGWEAR** | 5,443,928 | Towels, facecloths, shower curtains, pillowcases, bed sheets, bed blankets, comforters, comforter cases, bedspreads, pillow shams, dust ruffles, duvet covers, bed skirts, fabric window treatments in the nature of curtains, draperies, valances, and tie-backs; daybed covers, tablecloths not made of paper; textile napkins, curtains, draperies; tapestry style ornamental wall hangings made of textile; quilts in the nature of ornamental wall hangings; fabric sold by the yard for use in making curtains, drapes and upholstery; mattress pads, mattress encasement's being mattress covers, bed sheets, bed blankets, traveling blankets, comforters, mattress protectors being mattress pads and pillow protectors being pillow cases | Registered |
| **AN ORIGINAL PENGUIN BY** | 3,961,902 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription | Incontestable |

| Mark | Reg. No. | Goods / Services | Status |
|---|---|---|---|
| MUNSINGWEAR | | eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | |
| AN ORIGINAL PENGUIN BY MUNSINGWEAR | 5,822,146 | Pillows | Incontestable |
| AN ORIGINAL PENGUIN BY MUNSINGWEAR | 7,559,734 | Downloadable virtual goods, namely, computer programs featuring footwear, clothing, headwear, eyewear, and accessories in the nature of scarves, jewelry, hosiery, belts, and ties for use in online virtual worlds. | Registered |
| an original Penguin BY Munsingwear | 3,961,901 | Eyewear and eyewear accessories, namely frames for prescription and nonprescription eyeglasses and sunglasses, prescription and non-prescription sunglasses, eyeglass and sunglass chains, eyeglass and sunglass lenses, and cases for all the aforementioned goods | Incontestable |
| PENGUIN SPORT | 8,119,108 | Clothing, namely men's tops, shirts, pullover windshirts, pants, shorts, sweat shirts and jackets; Activewear, namely, jackets, pullover windshirts, sweaters, shirts, shorts, pants, sweat shirts, sweat shorts and sweat pants; Sportswear, namely, shorts, jackets, pullover windshirts, shirts, pants, sweat shirts, sweat shorts and sweat pants. | Registered |

Copies of the registration certificates for these marks are attached as Exhibit B.

18.     PEI's incontestable federal registrations under 15 U.S.C. § 1065 are conclusive evidence of the validity of the marks listed in the registrations, PEI's ownership of the marks, and PEI's exclusive right to use the marks in commerce in connection with the identified goods and/or services. 15 U.S.C. § 1115(b).  Moreover, PEI's other registrations are *prima facie* evidence of the validity of the marks, of PEI's ownership of the marks, and PEI's exclusive right to use the marks in commerce in connection with the identified goods and/or services. 15 U.S.C. § 1115(a).

19.    PEI also owns the following pending United States trademark applications, all of which were legally and validly filed with the USPTO (collectively, the "PEI Applications"):

| Mark | App. No. | Goods / Services | Status |
|---|---|---|---|
|  | 97/639,393 | Carrying cases specially adapted for electronic equipment, namely, mobile phones, smart phones and tablet computers, headphones, ear buds and computer stylus | Approved |
| **PENGUIN** | 98/165,084 | Goggles for sports; Diving goggles; Snow goggles; Swimming goggles. | Approved |
| **AN ORIGINAL PENGUIN BY MUNSINGWEAR** | 97/640,120 | Carrying cases specially adapted for electronic equipment, namely, mobile phones, smart phones and tablet computers, headphones, ear buds and computer stylus. | Approved |
|  | 98/424,080 | Clothing, namely, tops, shirts, t-shirts, sweatshirts, tank tops, pants, shorts, walking shorts, jeans, slacks, and skirts; clothing, namely, outerwear in the nature of wind-resistant jackets, jackets, coats, vests, pants, shorts, sweaters; headwear, namely, hats, caps, visors and headbands; footwear, namely, shoes, sneakers, flip flops, and sandals; ties; bowties; wristbands; belts for clothing; swimwear; hosiery; socks; golf shirts; polo shirts; sport shirts; dress shirts; tuxedo shirts; underwear; sleepwear; loungewear; pajamas; robes; hosiery; scarves; gloves; sleepwear; suits; wristbands as clothing; Retail store services featuring apparel, hats, leather goods, fashion accessories, jewelry, footwear, cosmetics, personal care products, eyewear, luggage, sports equipment [among others] | Approved |

11

| Mark | App. No. | Goods / Services | Status |
|------|----------|------------------|--------|
| AN ORIGINAL PENGUIN BY MUNSINGWEAR | 99/196,380 | Pillows | Pending |

Copies of the current Trademark Status and Document Retrieval ("TSDR") printouts from the USPTO for the PEI Applications are attached as Exhibit C.

20.    PEI also owns extensive common law rights in its penguin designs and PENGUIN word marks in connection with a wide variety of apparel, accessories and related goods and services. The marks reflected in the PEI Registrations and PEI Applications together with PEI's extensive common law rights in its PENGUIN word and design marks are hereinafter referred to as the "PENGUIN Marks."

21.    In addition, PEI maintains various social media accounts, including Facebook (www.facebook.com/OriginalPenguin), X f/k/a Twitter (https://x.com/originalpenguin?lang=en), YouTube (www.youtube.com/originalpenguintv), Pinterest (http://pinterest.com/originalpenguin), Instagram (http://instagram.com/originalpenguin), and TikTok (https://www.tiktok.com/@originalpenguinofficial) where the PENGUIN Marks are prominently displayed.  PEI's use of the PENGUIN Marks on the Internet reinforces the importance of the PENGUIN Marks to PEI and strengthens the public recognition of the PENGUIN Marks in the minds of consumers nationwide.

22.    PEI has expended substantial sums of money in marketing, advertising, and promoting its PENGUIN Marks, and through such sales and advertising has generated substantial goodwill and customer recognition in the PENGUIN Marks. The public has come to associate the PENGUIN Marks exclusively with PEI.

23.    PEI has derived substantial revenues from the sale of its products under the PENGUIN Marks.

24.    PEI's extensive use and advertising of the PENGUIN Marks have resulted in consumer recognition that the PENGUIN Marks identify PEI as the source of fashionable, high-quality products. The PENGUIN Marks are distinctive and well-known, and valuable consumer goodwill exists in the PENGUIN Marks. Such goodwill was generated long before Defendant's adoption and use of Defendant's confusingly similar marks.

25.    The PENGUIN Marks have become distinctive and famous under Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c), prior to Defendant's adoption and use of confusingly similar marks on apparel.

26.    PEI's PENGUIN Marks are assets of incalculable value as an identifier of its high-quality goods, services, and goodwill.

**DEFENDANT'S INFRINGING ACTIVITIES IN VIOLATION OF
PEI'S RIGHTS IN AND TO THE PENGUIN MARKS**

27.    Defendant is engaged in the unauthorized use of a family of PENGUIN marks including, for example: PUDGY PENGUINS; PENGU NATION; I AM MY PENGUIN, AND MY PENGUIN IS ME.; FOREVER PUDGY PENGUINS, and various penguin designs (collectively, "Defendant's Marks"). Defendant uses Defendant's Marks in connection with apparel, fashion accessories, and retail sales services related to apparel and fashion accessories.

28.    Defendant's Marks are similar to the PENGUIN Marks.

29.    Defendant sells clothing items featuring Defendant's Marks, including on the chest of shirts. A few examples of Defendant's apparel are shown below:















30.     The immediate similarities between Defendant's Marks and products and PEI's PENGUIN Marks and products are shown in the examples below, which compare PEI's and Defendant's products side by side:



| PEI's Products | Defendant's Products |
|---|---|
|  |  |

31.     Defendant had constructive notice of PEI's ownership of the federally registered rights in and to the PENGUIN Marks under 15 U.S.C. §1072, at least as early as February 10, 1959.

32.     PEI never authorized, licensed or otherwise permitted Defendant to use the PENGUIN Marks or any confusingly similar variation thereof in connection with apparel, fashion accessories, or retail services related to apparel or fashion accessories.

33.     At least as early as October 20, 2023, Defendant began selling apparel bearing Defendant's Marks online. Defendant currently sells its apparel on the website www.pudgypenguins.com ("Defendant's Website"), where products bearing Defendant's Marks are being advertised, offered for sale and sold to the United States and this District. Attached as Exhibit D are true and correct printouts of products currently available for sale on Defendant's Website.

34.     On June 8, 2022, Defendant filed an application to register the mark I AM MY PENGUIN, AND MY PENGUIN IS ME. with the USPTO under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), and assigned Application Serial No. 97448908 (the "I AM MY PENGUIN

Application"). A copy of the current status of the I AM MY PENGUIN Application from the USPTO TSDR is attached as Exhibit E.

35.     The I AM MY PENGUIN Application claims the following goods and services:

| Class | Goods/Services |
|---|---|
| 9 | Downloadable multimedia file containing artwork relating to animals, cartoon characters, and toys authenticated by non-fungible tokens (NFTs); Audio and video recordings featuring music and artistic performances; Downloadable music files authenticated by non-fungible tokens (NFTs) |
| 16 | Printed comic books; Printed materials, namely, novels and series of fiction books and short stories featuring scenes and characters based on video games; Collectable printed trading cards |
| 25 | Footwear; Hats; Hoodies; Pants; Caps being headwear; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Children's and infant's apparel, namely, jumper coveralls, overall sleepwear, pajamas, rompers and one-piece garments; Men's and women's jackets, coats, trousers, vests; Sweat pants |
| 28 | Board games; Puzzles; Toy action figures; Toy stuffed animals; Trading card games; Action figure toys; Fidget toys; Plastic character toys; Plush toys; Rubber character toys; Stress relief exercise toys; Stuffed toys |
| 30 | Candy; Snack mix consisting primarily of crackers, pretzels and/or popped popcorn; Cereal based snack food; Frozen-yogurt-based snack foods; Grain-based snack foods; Granola snacks; Ice-cream-based snack foods; Puffed corn snacks; Rice-based snack foods |
| 35 | Retail store services featuring virtual goods, namely, hats, pants, shorts, t-shirts, shoes, hoodies, jackets, jerseys, backpacks, music and fashion accessories for use in online virtual worlds; On-line retail store services featuring physical and virtual merchandise for use by members of an online community in connection with a designated website featuring fictional characters; Provision of an online marketplace for buyers and sellers of downloadable digital art images authenticated by non-fungible tokens (NFTs); Provision of an online marketplace for buyers and sellers of downloadable digital media, namely, image files, audio files, video files, multimedia files, text files and graphic files featuring artwork authenticated by non-fungible tokens (NFTs) |
| 41 | Entertainment services, namely, providing on-line, non-downloadable virtual characters for use in virtual environments created for entertainment purposes; Entertainment services, namely, providing online video games; Entertainment services, namely, providing virtual environments in which users can interact for recreational, leisure or entertainment purposes |
| 42 | Providing a website allowing users to upload and download music |

These goods and services are identical to those with which PEI uses its PENGUIN Marks and nearly identical to those for which PEI owns registrations. The I AM MY PENGUIN Application

seeks registration in International Classes 9, 25, and 35, which are identical classes in which PEI owns registrations for its PENGUIN Marks.

36.     On June 8, 2022, Defendant filed an application to register the mark PENGU NATION with the USPTO under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), and assigned Application Serial No. 97449689 (the "PENGU NATION Application"). A copy of the current status of the PENGU NATION Application from the USPTO TSDR is attached as Exhibit F.

37.     The term PENGU in the PENGU NATION Application is intended to be a short version of the word PENGUIN.

38.     The PENGU NATION Application claims the following goods and services:

| Class | Goods/Services |
|---|---|
| 9 | Downloadable multimedia file containing artwork relating to animals, cartoon characters, and toys authenticated by non-fungible tokens (NFTs); Audio and video recordings featuring music and artistic performances; Downloadable music files authenticated by non-fungible tokens (NFTs); all the foregoing files and recordings relating to penguin characters with human characteristics |
| 16 | Printed comic books; Printed materials, namely, novels and series of fiction books and short stories featuring scenes and characters based on video games; Collectable printed trading cards; all the foregoing books, stories and cards featuring penguin characters with human characteristics |
| 25 | Footwear; Hats; Hoodies; Pants; Caps being headwear; Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; Children's and infant's apparel, namely, jumper coveralls, overall sleepwear, pajamas, rompers and one-piece garments; Men's and women's jackets, coats, trousers, vests; Sweat pants |
| 28 | Board games; Puzzles; Toy action figures; Toy stuffed animals; Trading card games; Action figure toys; Fidget toys; Plastic character toys; Plush toys; Rubber character toys; Stress relief exercise toys; Stuffed toys |
| 30 | Candy; Snack mix consisting primarily of crackers, pretzels and/or popped popcorn; Cereal based snack food; Frozen-yogurt-based snack foods; Grain-based snack foods; Granola snacks; Ice-cream-based snack foods; Puffed corn snacks; Rice-based snack foods |
| 35 | Retail store services featuring virtual goods, namely, hats, pants, shorts, t-shirts, shoes, hoodies, jackets, jerseys, backpacks, music and fashion accessories for use in online virtual worlds; On-line retail store services featuring physical and virtual merchandise for use by members of an online community in connection with a designated website featuring fictional penguin characters with human characteristics; |

| Class | Goods/Services |
|-------|----------------|
|  | Provision of an online marketplace for buyers and sellers of downloadable digital art images featuring fictional penguin characters with human characteristics and authenticated by non-fungible tokens (NFTs); Provision of an online marketplace for buyers and sellers of downloadable digital media, namely, art images, music, video clips, featuring fictional penguin characters with human characteristics and authenticated by non-fungible tokens (NFTs) |
| 41 | Entertainment services, namely, providing on-line, non-downloadable virtual penguin characters with human characteristics for use in virtual environments created for entertainment purposes; Entertainment services, namely, providing online video games featuring fictional penguin characters with human characteristics; Entertainment services, namely, providing virtual environments featuring fictional penguin characters with human characteristics in which users can interact for recreational, leisure or entertainment purposes |
| 42 | Providing a website allowing users to upload and download music |

These goods and services are identical to those with which PEI uses its PENGUIN Marks and nearly identical to those for which PEI owns registrations. The PENGU NATION Application seeks registration in International Classes 9, 25, and 35, which are identical classes in which PEI owns registrations for its PENGUIN Marks.

39.    On June 8, 2022, Defendant filed an application to register the mark PUDGY PENGUINS with the USPTO under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), and assigned Application Serial No.  97448815 (the "PUDGY PENGUINS Application"). A copy of the current status of the PUDGY PENGUINS Application from the USPTO TSDR is attached as Exhibit G.

40.    The PUDGY PENGUINS Application claims the following goods and services:

| Class | Goods/Services |
|-------|----------------|
| 16 | Printed comic books; Printed materials, namely, novels and series of fiction books and short stories featuring scenes and characters based on video games; Collectable printed trading cards |
| 28 | Board games; Puzzles; Toy action figures; Toy stuffed animals; Trading card games; Action figure toys; Fidget toys; Plastic character toys; Plush toys; Rubber character toys; Stress relief exercise toys; Stuffed toys |
| 30 | Candy; Snack mix consisting primarily of crackers, pretzels and/or popped popcorn; Cereal based snack food; Frozen-yogurt-based snack foods; Grain-based snack foods; |

| Class | Goods/Services |
|---|---|
| | Granola snacks; Ice-cream-based snack foods; Puffed corn snacks; Rice-based snack foods |
| 35 | Retail store services featuring virtual goods, namely, hats, pants, shorts, t-shirts, shoes, hoodies, jackets, jerseys, backpacks, music and fashion accessories for use in online virtual worlds; On-line retail store services featuring physical and virtual merchandise for use by members of an online community in connection with a designated website featuring fictional characters; Provision of an online marketplace for buyers and sellers of downloadable digital art images authenticated by non-fungible tokens (NFTs); Provision of an online marketplace for buyers and sellers of downloadable digital media, namely, image files, audio files, video files, multimedia files, text files and graphic files featuring artwork authenticated by non-fungible tokens (NFTs) |
| 41 | Entertainment services, namely, providing on-line, non-downloadable virtual characters for use in virtual environments created for entertainment purposes; Entertainment services, namely, providing online video games; Entertainment services, namely, providing virtual environments in which users can interact for recreational, leisure or entertainment purposes |
| 42 | Providing a website allowing users to upload and download music |

These goods and services are highly similar to those with which PEI uses its PENGUIN Marks and nearly identical to those for which PEI owns registrations. The PUDGY PENGUINS Logo Application seeks registration in International Class 35 which is an identical class in which PEI owns registrations for its PENGUIN Marks.

41.     On June 30, 2022, Defendant filed an application to register the mark FOREVER PUDGY PENGUINS with the USPTO under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b), and assigned Application Serial No.  98066131 (the "FOREVER PUDGY PENGUINS Application"). A copy of the current status of the FOREVER PUDGY PENGUINS Application from the USPTO TSDR is attached as Exhibit H.

42.     The FOREVER PUDGY PENGUINS Application claims the following goods and services:

| Class | Goods/Services |
|---|---|
| 9 | Audio and video recordings featuring music and artistic performances; Downloadable music files authenticated by non-fungible tokens (NFTs); Downloadable multimedia |

| Class | Goods/Services |
|-------|----------------|
|  | files containing artwork relating to animals, cartoon characters, and toys, with ownership authenticated through non-fungible tokens (NFTs) and soulbound tokens (SBTs); Downloadable virtual goods, namely, articles of clothing, shirts, sweatpants, jeans and sweatshirts available for purchase and use in video games, computer programs, and online virtual worlds; Downloadable video game software |
| 28 | Board games; Puzzle board games; Toy action figures; Toy stuffed animals; Trading card games; Action figure toys; Plastic character toys; Plush toys; Rubber or vinyl character toys; Stress relief exercise toys; Social emotional toys, namely, children's multiple activity toys, sensory toys; Children's educational toys for developing sensory, fine motor, cognitive, communication, and counting skills; Stuffed toys |
| 41 | Entertainment services, namely, providing on-line, non-downloadable virtual characters for use in online and virtual environments created for entertainment purposes; Entertainment services, namely, providing online video games; Entertainment services, namely, providing virtual environments in which users can interact for recreational, leisure or entertainment purposes |

These goods and services are identical to and highly similar to those with which PEI uses its PENGUIN Marks and nearly identical to those for which PEI owns registrations. The FOREVER PUDGY PENGUINS Application seeks registration in International Class 9 which is an identical class in which PEI owns registrations for its PENGUIN Marks.

43.    On October 25, 2022, Defendant filed an application to register the mark



PUDGY PENGUINS in design form (i.e., ) with the USPTO under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051(a), and assigned Application Serial No.  97646264 (the "PUDGY PENGUINS Logo Application"). A copy of the current status of the PUDGY PENGUINS Logo Application from the USPTO TSDR is attached as Exhibit I.

44.    The PUDGY PENGUINS Logo Application claims the following services:

| Class | Services |
|-------|----------|
| 35 | Retail store services featuring virtual goods, namely, hats, pants, shorts, t-shirts, shoes, hoodies, jackets, jerseys, backpacks, music and fashion accessories for use in online virtual worlds; On-line retail store services featuring physical and virtual merchandise for use by members of an online community in connection with a designated website featuring fictional characters; Provision of an online marketplace |

| Class | Services |
|-------|----------|
|       | for buyers and sellers of downloadable digital art images authenticated by non-fungible tokens (NFTs); Provision of an online marketplace for buyers and sellers of downloadable digital media, namely, image files, audio files, video files, multimedia files, text files and graphic files featuring artwork authenticated by non-fungible tokens (NFTs) |

These services are highly similar to those with which PEI uses its PENGUIN Marks and nearly identical to those for which PEI owns registrations. The PUDGY PENGUINS Logo Application seeks registration in International Class 35 which is an identical class in which PEI owns registrations for its PENGUIN Marks.

45.     The I AM MY PENGUIN Application, PENGU NATION Application, PUDGY PENGUINS Application, FOREVER PUDGY PENGUINS Application, and PUDGY PENGUINS Logo Application are hereinafter referred to as "Defendant's Applications."[1]

46.     On October 20, 2023, PEI sent Defendant's counsel a cease and desist letter that informed Defendant of PEI's prior rights in its PENGUIN Marks, notifying Defendant that the use of Defendant's Marks and sale of Defendant's products infringe and dilute PEI's famous PENGUIN Marks, and demanded that Defendant abandon Defendant's Applications with the USPTO and cease use of Defendant's Marks ("PEI's Cease and Desist Letter").

47.     On January 17, 2024, PEI filed a Notice of Opposition against Defendant's I AM MY PENGUIN Application with the USPTO Trademark Trial and Appeal Board ("TTAB"), alleging a likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), and dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), which was assigned Opposition No. 91289270 (the "I AM MY PENGUIN Opposition").  A true and correct copy of the Notice of Opposition for the I AM MY PENGUIN Opposition is attached hereto as Exhibit J.

---

[1] Defendant's Applications are listed on the USPTO in the name of LSLTTT Holdings Inc., the former name of Defendant, as Defendant has not recorded its name change with the USPTO.

48. On July 9, 2024, PEI filed a Notice of Opposition against Defendant's PENGU NATION Application with the USPTO TTAB, alleging a likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), and dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), which was assigned Opposition No. 91292550 (the "PENGU NATION Opposition"). A true and correct copy of the Notice of Opposition for the PENGU NATION Opposition is attached hereto as Exhibit K. The I AM MY PENGUIN Opposition and the PENGU NATION Opposition are hereinafter referred to as "PEI's Oppositions."

49. PEI's Oppositions remain pending as of the date of this Complaint.

50. Following PEI's Cease and Desist Letter and PEI's Oppositions, Defendant continued to use Defendant's Marks in commerce in connection with apparel and online sales of apparel, and did not abandon Defendant's Applications with the USPTO.

51. Defendant's Marks, and the placement thereof on apparel, is identical or highly similar to PEI's PENGUIN Marks and PEI's products.

52. Moreover, Defendant's continued use of Defendant's Marks on apparel and sale of such products are willful and intentional acts intended to trade on the reputation and goodwill of PEI.

53. Defendant's use of Defendant's Marks is likely to mislead, deceive and confuse the purchasing public and the trade. It is likely that consumers will mistakenly believe that Defendant is connected, associated, or in some way affiliated with PEI, when in fact no such connection, association or affiliation exists.

54. In addition, Defendant's commercial use of Defendant's Marks on apparel dilutes, or is likely to dilute, the distinctive quality and reputation of PEI's famous PENGUIN Marks.

55.     Defendant's conduct causes damage and irreparable injury to PEI, and to its goodwill and business reputation.

56.     As a result of the aforesaid acts by Defendant, PEI has suffered and continues to suffer substantial damage and irreparable injury. PEI has no adequate remedy at law, and unless Defendant is restrained and enjoined by the Court, these acts will continue to cause damage and irreparable injury to PEI, and damage its goodwill and business reputation. PEI cannot ascertain the precise amount of its damage at this time, but such damages are likely to include disgorgement of all profits and treble damages (i.e., triple damages) for willful infringement.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. §1114(1)

57.     PEI repeats and realleges the allegations of Paragraphs 1 through 56 as through fully set forth herein.

58.     Defendant's acts constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

59.     PEI is the rightful owner of the PEI PENGUIN Registrations, which constitute proof of PEI's valid, exclusive trademark rights and its entitlement to protection under the Lanham Act.

60.     Defendant has used, and continues to use, Defendants' Marks in United States commerce in connection with apparel and retail sales of apparel.

61.     Defendant's unauthorized and infringing use of Defendant's Marks is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of Defendant's goods and services by PEI or as to the affiliation, connection or association between PEI and Defendant. The consuming public and the trade are likely to believe that Defendant's goods and

services originate with PEI, are licensed, sponsored or approved by PEI, or are in some way connected with or related to PEI, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

62.    Defendant has used and are continuing to use Defendant's Marks with full knowledge of PEI's extensive prior rights in the PENGUIN Marks and after being warned by PEI that the use is infringing. Defendant's unauthorized and infringing use of Defendant's Marks constitutes intentional and willful infringement of PEI's rights in and to its federally registered PENGUIN Marks, as pled herein, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1), and entitles PEI to enhanced damages.

63.    Defendant had actual notice of the PENGUIN Marks at least as early as October 20, 2023, when PEI sent Defendant PEI's Cease and Desist Letter. Thus, Defendant has been willfully infringing the PENGUIN Marks, which has only increased the amount of damages to which PEI is entitled.

64.    These infringing acts have occurred in interstate commerce and have caused and will continue to cause, unless restrained by this Court, serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

## COUNT II

### FEDERAL TRADEMARK DILUTION
### 15  U.S.C. §1125(c)

65.    PEI repeats and realleges the allegations of Paragraphs 1 through 56 as though fully set forth herein.

66.    Defendant's acts constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

67.     As a result of the duration, extent and geographic reach of PEI's use of the PENGUIN Marks, and advertising and publicity associated with the PENGUIN Marks, the PENGUIN Marks have achieved an extensive degree of distinctiveness and are famous marks. The PENGUIN Marks are widely recognized by the consuming public as a designation of source of PEI's apparel, accessories and related goods and services.

68.     Defendant began using Defendant's Marks in interstate and/or United States commerce, long after the PENGUIN Marks became famous and distinctive.

69.     Defendant's use of Defendant's Marks in connection with highly similar goods and services to PEI's goods and services dilutes, or is likely to dilute, by blurring and tarnishment, the distinctive quality and reputation of PEI's famous PENGUIN Marks under Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

70.     These acts have caused, and will continue to cause unless restrained by this Court, serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

## COUNT III

### FEDERAL UNFAIR COMPETITION
### 15  U.S.C. §1125(a)

71.     PEI repeats and realleges the allegations of Paragraphs 1 through 56 as though fully set forth herein.

72.     Defendant's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

73.     Defendant's unauthorized use in commerce of Defendant's Marks, as alleged herein, is likely to cause confusion, mistake or deception as to the affiliation, connection, or association of Defendant with PEI, or as to the origin, sponsorship, or approval of Defendant's goods or services, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

74.     These acts occurred in interstate commerce and have caused, and will continue to cause unless restrained by this Court, serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

### COUNT IV

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES
### 501 FLA. STAT. § 201 *et seq.*

75.     PEI repeats and realleges the allegations of Paragraphs 1 through 56 as though fully set forth herein.

76.     Defendant's acts constitute deceptive trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, 501 FLA. STAT. § 201 *et seq.*

77.     Defendant knew, or should have known, that Defendant's unauthorized use of Defendant's Marks would cause an injury via deception of representation, omission, or practice that is likely to mislead consumers, as it gives rise to the incorrect belief that Defendant has some connection with PEI. These acts constitute deceptive trade practices in the course of Defendant's business in violation of the Florida Deceptive and Unfair Trade Practices Act, 501 FLA. STAT. § 201 *et seq.*

78.     These acts have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury to PEI, for which PEI has no adequate remedy at law.

### COUNT V

### FLORIDA COMMON LAW UNFAIR COMPETITION

79.     PEI repeats and realleges the allegations of Paragraphs 1 through 56 as though fully set forth herein.

80.     Defendant's acts constitute unfair competition under Florida common law.

81.     Defendant has misappropriated valuable property rights of PEI and is trading off the goodwill symbolized by the PENGUIN Marks. These acts are likely to cause confusion or mistake, or to deceive members of the consuming public and the trade. These acts have continued in bad faith despite Defendant's knowledge of PEI's trademark rights. These acts constitute unfair competition in violation of the common law of the State of Florida.

82.     Defendant's acts have caused and will continue to cause harm to PEI.

## PRAYER FOR RELIEF

WHEREFORE, PEI prays that this Court enter a judgment and order:

1.     That Defendant has willfully violated Sections 32(1), 43(a) and 43(c) of the Lanham Act;

2.     That Defendant committed acts of unfair competition and deceptive business and trade practices under Florida statutory and common law;

3.     That Defendant, its officers, directors, agents, servants, employees, successors, shareholders, affiliates, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

> A.     Using Defendant's Marks alone or in connection with other elements in commerce in any manner in connection with any items of clothing, apparel, fashion accessories, or retail sales of the same;

> B.     Using any name, mark, domain name, user name, or social media handle that wholly incorporates Defendant's Marks, or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or colorable imitation of the PENGUIN Marks, or registering, transferring or exercising control over any domain names or social media pages that

incorporate, in whole or in part, the PENGUIN Marks or anything confusingly similar in connection with any items of clothing, apparel, fashion accessories, or retail sales of the same;

C.    Registering or seeking to register Defendant's Marks or any confusingly similar mark in connection with any items of clothing, apparel, fashion accessories, or retail sales of the same;

D.    Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendant is in any way affiliated, connected or associated with PEI;

E.    Licensing or authorizing others to use Defendant's Marks, or any other mark that is confusingly similar to the PENGUIN Marks;

F.    Injuring PEI's business reputation and the goodwill associated with PEI's PENGUIN Marks, and from otherwise unfairly competing with PEI in any manner whatsoever;

G.    Passing off Defendant's goods or services as those of PEI;

H.    Committing any acts that will blur or dilute, or are likely to blur or dilute, the distinctive quality of the famous PENGUIN Marks;

I.    Shipping, delivering, printing, ordering, importing, distributing, returning, transferring, destroying or otherwise moving or disposing of in any manner apparel or fashion accessories bearing Defendant's Marks or any other mark that is confusingly similar mark to the PENGUIN Marks;

J.    Altering, interlining, destroying, permitting the destruction of, or in any other fashion changing any records, including electronic records, in the

actual or constructive care, custody or control of Defendant that are relevant to the subject matter of this lawsuit or likely to lead to the discovery of relevant records or evidence, wherever said records are physically located; and

K.      Falsely advertising or promoting goods or services, such that said advertisement or promotion misrepresents the nature, characteristics and qualities of origin of Defendant's goods, services, or commercial activities.

4.      That the Court find the Defendant's Applications and the uses contemplated by the Defendant's Application are likely to cause confusion with and dilute the distinctive value of the PENGUIN Marks;

5.      That Defendant be directed to expressly abandon Defendant's Applications with the USPTO;

6.      That the Court order the USPTO to declare that Defendant's Applications be immediately rejected and refused based upon a likelihood of confusion with and dilution of the PENGUIN Marks;

7.      That, pursuant to 15 U.S.C. §1118, Defendant be required to deliver up and destroy all products, labels, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendant that bear Defendant's Marks or any other mark that is likely to be confused with PEI's PENGUIN Marks;

8.      That, because of Defendant's willful actions and pursuant to 15 U.S.C. §1117(a) (as an "exceptional case") and 501 FLA. STAT. § 2075, PEI be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

A.   All profits received by Defendant from sales and revenues of any kind dating from Defendant's first use of Defendant's Marks to present, less only proven elements of cost or deduction, and all damages sustained by PEI as a result of Defendant's actions;

B.   Treble damages or profits, whichever amount is greater;

C.   Reasonable attorneys' fees; and,

D.   The costs of this action;

9.   That pursuant to 15 U.S.C. §1116, Defendant be directed to file with the Court and serve on PEI within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction; and

10.   That PEI be granted such other and further relief as this Court may deem just.

## JURY TRIAL DEMANDED

PEI demands a trial by jury on all issues so triable.

Date: March 4, 2026                         Respectfully submitted,

**BRITO, PLLC**
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office: 305-614-4071
Fax: 305-440-4385

By: */s/ Alejandro Brito*
**ALEJANDRO BRITO**
Florida State Bar No.: 038442
Primary: abrito@britopllc.com
Secondary: apiriou@britopllc.com
**CECILIA S. MIRANDA**
Florida Bar No. 1025435
Primary: cmiranda@britopllc.com
Secondary: lcoello@britopllc.com

Joseph V. Norvell
(*pro hac vice* admission pending)
Katherine E. Sieve
(*pro hac vice* admission pending)
NORVELL IP LLC
P.O. Box 2461
Chicago, Illinois 60690
Telephone:     (888) 315-0732
courts@norvellip.com

*Attorneys for Plaintiff PEI Licensing LLC*